## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **SERVICE EMPLOYEES INTERNATIONAL UNION NATIONAL INDUSTRY PENSION FUND,** *et al.*, <br><br>           **Plaintiffs,** <br><br>       **v.** <br><br> **HARBORVIEW HEALTHCARE CENTER, INC.,** <br><br>           **Defendant.** | **Civil Action No. 15-0627 (ESH)** |

## MEMORANDUM OPINION

Plaintiffs Service International Union National Industry Pension Fund (the "Fund") and its Trustees bring this action for unpaid contributions, interest, liquidated damages, and attorneys' fees and costs against defendant Harborview Healthcare Center Inc. ("Harborview"), pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132(a)(3), (d)(1), (g)(2) and 1145, and the Labor Management Relations Act of 1947 ("LMRA"), 29 U.S.C. § 185(a).  (Compl. at 1.)  Before the Court is plaintiffs' motion for summary judgment (Pls.' Mot. for Summary Judgment, Dec. 21, 2015 [ECF No. 15] ("Pls.' Mot.")), which, for the reasons stated herein, will be granted.

### BACKGROUND

### I.     FACTS

Unless otherwise noted, the facts set forth here are undisputed, taken from the Joint Stipulations of Fact and the uncontroverted portions of plaintiffs' statement of undisputed

material facts.[1]   (*See* Joint Stipulations of Fact ("Joint Facts") (Pls.' Mot. Ex. 7); Pls.' Statement of Material Facts as to Which There is No Genuine Dispute ("Pls.' Facts").)

      In 2010, Harborview entered into a "valid collective bargaining agreement ("CBA") with 1199 SEIU Healthcare Workers East, New Jersey Region" (the "Union").   (*See* Joint Facts ¶ 1; Pls.' Facts ¶ 4; *see also* Pls.' Mot. Ex. 1 (CBA).)   Pursuant to the CBA, which remains in effect today,[2] Harborview became a "participating employer in the Fund," a multiemployer pension plan within the meaning of ERISA that "provides pension benefits to eligible employees of contributing employers."   (Pls.' Facts ¶¶ 1, 6; *see also* Anderson Decl. ¶ 34; CBA art. 25.2.)   As a result, Harborview became "obligated . . . to pay pension contributions to the [] Fund on behalf of its eligible employees."   (Joint Facts ¶ 2; *see also* Pls.' Facts ¶ 6; CBA art. 25.1.)   Under the

---

[1] As required by Local Civil Rule 7(h), plaintiffs' motion for summary judgment is "accompanied by a statement of material facts as to which the moving party contends there is no genuine issue," with "references to the parts of the record relied on to support the statement." *See* LCvR 7(h); *see also* Pls.' Facts ¶¶ 1-33 (citing Pls. Exs. 1-7 & the Declaration of Kenneth Anderson).)   Defendant's opposition is accompanied by a "Response to Plaintiffs' Statement of Undisputed Material Facts" and a "Counterstatement of Material Facts."   The first document indicates whether defendant admits, denies, or "lack sufficient information to admit or deny" the facts set forth in plaintiffs' statement.   (*See* Defs.' Response ¶¶ 1-33.)   The second document purports to comply with Local Civil Rule 7(h), which requires "a separate concise statement of genuine issues setting forth all material facts as to which it is contended there still exists a genuine issue necessary to be litigated, which shall include references to the parts of the record relied on to support the statement." LCvR 7(h).   However, it is mostly a restatement of defendants' legal arguments against summary judgment in paragraph form (with citations to a declaration prepared by defendant's counsel).   (*See* Def.'s Counterstatement of Material Facts ¶¶ 1-17.)   Having closely examined all of these documents and any record evidence cited therein, the Court finds that defendant has effectively conceded that there are no genuine disputes with respect to the facts set forth in paragraphs 1-25 and 31-33 of plaintiffs' statement of material facts.   *See* Defs.' Response ¶¶ 26-30 ("specifically controvert[ing]" ¶¶ 26-30 of plaintiffs' statement of undisputed facts and "in that regard," referring the Court to defendant's counterstatement).

[2] The CBA initially covered the period of April 1, 2010, through March 31, 2014, but it automatically renewed for an additional four years.   (*See* CBA art. 34; *see also* Joint Facts ¶ 2 ("CBA in effect for the period of April 1, 2010[,] through the present").)

CBA, covered employees include all "[r]egular full-time and regular part-time employees . . . after the completion of 90 days of employment, measured from their date of hire." (CBA art. 25.3(a).) In addition to the CBA, Harborview also agreed to be bound by the "Trust Agreement" that established the Fund and the "Statement of Policy for Collection of Delinquent Contributions" ("Collection Policy") adopted by the Fund's Trustees.[3] (*See* Joint Facts ¶ 4; *see also* Pls.' Facts ¶¶ 7-8; CBA art. 25.4; Pls.' Mot. Ex. 2 (Trust Agreement); Pls.' Mot. Ex. 3 (Collection Policy).)

Effective April 1, 2010, Harborview agreed to contribute to the Fund on behalf of its covered employees at the initial rate of "2.2% per paid hour . . . excluding overtime pay, uniform allowance and unused sick leave payout." (CBA art. 25.3(a); *see also* Joint Facts ¶ 2; Pls.' Facts ¶ 22.) Thereafter, Harborview's contribution rate increased annually: to 2.37% (effective April 1, 2011), 2.55% (effective April 1, 2012), 2.75% (effective April 1, 2013), 2.97% (effective April 1, 2014), and 3.20% (effective April 1, 2015). (*See* Pls.' Facts ¶¶ 20-25; Joint Facts ¶ 3; CBA art. 25.3(a).)[4]

---

[3] The Trust Agreement empowers the Fund's Trustees to "establish such procedures, rules and regulations . . . as shall be necessary to carry out the operation of the [Fund] and effectuate the purpose thereof." (Trust Agreement § 5.1(22).)

[4] Pursuant to the Pension Protection Act of 2006 ("PPA"), Pub. L. 109-280 (2006) ("PPA"), the Fund was determined to be in critical status for the plan years 2009 through 2015; accordingly, it implemented a Rehabilitation Plan which required participating employers to make supplemental contributions. (*See* Pls.' Facts ¶¶ 16-18; *see also* Pls.' Mot. Ex. 5 (Rehabilitation Plan).) The supplemental contributions were built into the CBA for 2011 and 2012 and thereafter determined by the "Preferred Schedule for Supplemental Contributions" in the Fund's Rehabilitation Plan. (*See* Pls.' Facts ¶¶ 19-24.) The 2.2% rate for 2010 reflects a base contribution rate of 2.0% per paid hour plus a 10% supplemental contribution; the 2.37% rate reflects an 18.5% supplemental contribution; the 2.55% rate reflects a 27.7% supplemental contribution; the 2.75% rate reflects a 37.6% supplemental contribution; the 2.97% rate reflects a 48.3% contribution; and the 3.20% rate reflects a 59.8% supplemental contribution. (*See* Pls.' Facts ¶¶ 20-24; Rehabilitation Plan at 4.)

Harborview's contributions, along with "supporting remittance reports," are due by "the 15th day of the month following the month in which the work was performed for which the contributions are owed."  (Collection Policy § 2.1; *see also* Pls.' Facts ¶ 9; Trust Agreement § 3.1; CBA art. 25.3(b), (c).)  The remittance reports show the "monthly paid hours reported by [Harborview] and the monthly pension contributions paid to the . . . Fund."  (Joint Facts ¶ 8; *see also* Pls.' Facts ¶ 9 ("remittance reports include hours paid, excluding overtime, for all eligible . . . employees").)

For delinquent contributions, the Fund is entitled to collect "interest, liquidated damages, attorneys' fees and any other expenses incurred by the Fund in collecting any delinquency."[5] (Collection Policy §§ 1.5, 5.3-5.4; *see also* CBA art. 25.6; Pls.' Facts ¶¶ 11-13.)  For contributions that are over 15 days late, the Fund charges interest at the rate of 10% per annum, calculated from the due date for the delinquent contributions through and including the date the payment is actually received by the Fund.  (*See* Collection Policy §§ 2.4, 5.1; Pls.' Facts ¶ 11.)  For contributions that are over 30 days late, where litigation has commenced,[6] the Fund assesses liquidated damages, calculated as the greater of the interest due or 20% of the delinquent contributions.  (*See* Collection Policy §§ 2.4, 5.2; Pls.' Facts ¶ 12.)

According to plaintiffs, over the past six years Harborview has failed to remit in full its required contributions for employees in three classifications covered by the CBA: certified assistant nurses, dietary and housekeeping employees, and recreational employees.  (*See* Pls.'

[5] The Collection Policy further provides that an employer's obligations to pay interest, liquidated damages, attorneys' fees and costs are contractual obligations independent of the provisions of ERISA Section 502(g)(2).  (See Collection Policy § 5.5; see also Pls.' Facts ¶ 14.)

[6] Prior to litigation, liquidated damages are 5% of the amount owed or $50.00, whichever is greater.  (*See* Collection Policy § 2.4.)

4

Facts ¶ 26.)  As a result, plaintiffs claim that Harborview owes the Fund a total of $36,766.17 in

unpaid contributions, interest as of December 21, 2015, and liquidated damages, plus a yet to be

determined amount in attorneys' fees and costs.  (*See* Pls.' Facts ¶¶ 26-30; *see also* Anderson

Decl. ¶¶ 31-33 & Exs. A-C thereto.)  Specifically, plaintiffs calculate that Harborview owes the

following: (1) for certified assistant nurses, $12,869.02 in unpaid contributions, $4,761.03 in

liquidated damages, and $1,724.72 in interest, for a total of $19,354.77; (2) for dietary and

housekeeping employees, $8,766.58 in unpaid contributions, 4,643.27 in liquidated damages,

and $1,557.38 interest, for a total of $14,967.23; and (3) for recreational employees, $1,413.29 in

unpaid contributions, $742.84 in liquidated damages, and $288.04 in interest, for a total of

$2,444.17.  (Pls.' Facts ¶¶ 28-30[7]; *see also* Anderson Decl. ¶¶ 25-33 & Exs. A-C thereto.)

Harborview denies owing the amounts calculated by plaintiffs.  (*See* Defs.' Response to

Plaintiffs' Statement of Undisputed Material Facts ¶¶ 26-30 ("Defs.' Response to Pls.' Facts").)

The Fund is also authorized to conduct a payroll review audit of any contributing

employer for the purpose of ensuring that such employer has complied with the contribution

requirements.  (*See* Trust Agreement § 5.1(14); Collection Policy § 4.1; Pls.' Facts ¶ 10; CBA

art. 25.5.)  When an audit discloses an underpayment, the Fund sends a letter to the employer

requesting payment of the underpayment, interest, and liquidated damages.  (*See* Collection

Policy §§ 4.7, 4.10.)  If the employer fails to pay after three notices, the Fund files suit.  (*See*

Collection Policy § 4.7.)  The Fund is also authorized to collect attorneys' fees and costs

associated with the payroll review.  (*See* Collection Policy §§ 5.3-5.4.)

---

[7] Although paragraph 30 in plaintiffs' statement of facts actually refers to "dietary and
housekeeping employees," (Pls.' Facts ¶ 30), it is apparent from the Anderson Declaration and
the exhibits thereto the numbers in paragraph 30 pertain to recreational employees.  (*See*
Anderson Decl. ¶ 33 & Ex. C thereto.)

The Fund conducted a payroll review audit of Harborview for the period of April 1, 2010, through December 31, 2011, with respect to two groups of employees: its certified assistant nurses and its recreational employees.  (Pls.' Facts ¶ 31; see also Pls.' Mot. Ex. 6 (audit-related documents).)  The conclusion of the audit was that Harborview had underreported the paid hours of eligible employees during the period covered by the audit, resulting in it owing unpaid contributions, interest and liquidated damages.  (Pls.' Facts ¶ 32; *see also* Pls. Mot. Ex. 6, at 1-2 (letters from the Fund to Harborview dated September 21, 2012, and November 8, 2012, attaching results of audit and seeking payment).)  As of November 30, 2012, the Fund calculated that Harborview owed a total of $1,893.08 for its certified assistant nurses ($1440.54 in unpaid contributions, $125.82 in liquidated damages and $326.72 in interest) and $143.37 for its recreational employees ($75.18 in unpaid contributions, $50.00 in liquidated damages, and $18.19 in interest), for a total of $2,036.45.  (*See* Pls.' Mot. Ex. 6, at 1.)  Harborview has "stipulated that it has no basis to contest the findings of the Pension Fund's payroll audit." (Joint Facts ¶ 7.)

As of December 21, 2015, with the additional accrued interest and increased rate of liquidated damages due to litigation, plaintiffs calculate that Harborview owes a total of $3,389.73 for its certified assistant nurses ($1440.93 in unpaid contributions, $228.19 in liquidated damages, and $1,720.16 in interest) and a total of $221.61 for its recreational employees ($75.18 in unpaid contributions, $50.00 in liquidated damages, and $97.43 in interest), for a total of $3,611.34.[8]  (*See* Pls.' Facts ¶¶ 32-33; Anderson Decl. ¶¶ 24-36.)

---

[8] Plaintiffs appear to have made a minor mathematical error in totaling these numbers as the sum of the numbers listed for recreational employees comes to $222.61, not $221.61, which would make the total amount due $3,612.34, not $3,611.34.

Defendant denies owing these amounts.  (*See* Def.'s Response to Pls.' Facts ¶¶ 32-33.)

## II.     PROCEDURAL HISTORY

On April 24, 2015, plaintiffs filed suit against Harborview seeking to recover the

amounts they believed Harborview owed the Fund pursuant to the payroll audit (*see* Compl. ¶¶

21-27) and as a result of other delinquent contributions (Compl. ¶¶ 37-43), plus interest,

liquidated damages, and attorneys' fees and costs.[9]  After discovery was completed, plaintiffs

moved for summary judgment on both claims.  Defendant opposes summary judgment on the

ground that there is a genuine dispute regarding the amount Harborview owes.  (*See* Def.'s

Opp'n to Pls.' Mot. at 3-6.)

## ANALYSIS

## I.     LEGAL STANDARD

"A party may move for summary judgment, identifying each claim or defense--or the part

of each claim or defense--on which summary judgment is sought.  The court shall grant summary

judgment if the movant shows that there is no genuine dispute as to any material fact and the

movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A "material" fact is

one capable of affecting the substantive outcome of the litigation.  *See Anderson v. Liberty*

*Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute is "genuine" if there is enough evidence for a

reasonable jury to return a verdict for the non-movant.  *See Scott v. Harris*, 550 U.S. 372, 380

(2007). The inquiry under Rule 56 is essentially "whether the evidence presents a sufficient

disagreement to require submission to a jury or whether it is so one-sided that one party must

---

[9] The complaint also included a claim for missing remittance reports (*see* Compl. ¶¶ 28-37), but that claim has presumably been resolved or abandoned as it is not mentioned in plaintiffs' motion for summary judgment.

prevail as a matter of law." *Anderson*, 477 U.S. at 251–52.  The moving party bears the initial

burden of identifying portions of the record that demonstrate the absence of any genuine

disputes.  *See* Fed. R. Civ. P. 56(c)(1); *Celotex*, 477 U.S. at 323.  In response, the non-moving

party must point to portions of the records that reveal a genuine dispute or show that the

materials cited by the moving party do not establish the absence of a genuine dispute.  *See* Fed.

R. Civ. P. 56(c)(1); *Celotex*, 477 U.S. at 324.  Inferences must be analyzed in the light most

favorable to the non-movant, *see Anderson*, 477 U.S. at 255, but conclusory assertions offered

without any evidentiary support do not establish a genuine issue for trial.  *See Greene v. Dalton*,

164 F.3d 671, 675 (D.C. Cir. 1999).

## II.    PAYROLL AUDIT

Plaintiffs' motion for summary judgment on the payroll audit claim is supported by a

declaration from Kenneth Anderson, the Fund's Contribution Compliance Manager ("Anderson

Decl."), and copies of the audit-related documents.  (*See* Pls.' Facts ¶¶ 32-33; Anderson Decl. ¶¶

34-36; Pls.' Mot. Ex. 6.)  Plaintiffs contend that this evidence establishes as an undisputed fact

that as of December 21, 2015, Harborview owed the Fund a total of $3,611.34 due to the payroll

audit.  (*See* Pls.' Facts ¶¶ 32-33; Anderson Decl. ¶¶ 34-36; Pls.' Mot. Ex. 6.)  In response,

defendant has admitted that "it has no basis to contest the findings of the . . . payroll audit" (Joint

Facts ¶ 7), and it has not cited any evidence that controverts the Anderson Declaration.

Accordingly, there is not a genuine dispute as to the amount Harborview owes pursuant to the

payroll audit, and plaintiffs are entitled to summary judgment on this claim.

## III.   DELINQUENT CONTRIBUTIONS

Plaintiffs' motion for summary judgment on the delinquent contributions claim is also

supported by the Anderson Declaration, along with the spreadsheets attached thereto, and other

documentary evidence.  (*See* Anderson Decl. ¶¶ 25-33 & Exs. A-C (spreadsheets showing plaintiffs' calculations of amounts owed); CBA; Trust Agreement; Collection Policy.)  Plaintiffs contend that this evidence establishes as an undisputed fact that as of December 21, 2015, Harborview owed the Fund an additional $36,766.17 in unpaid contributions, interest, and liquidated damages.  (Pls.' Facts ¶¶ 26-30.)  Defendant again does not contest liability, but argues that plaintiffs are not entitled to summary judgment on damages because there are genuine disputes as to the amount that Harborview owes.  The Court disagrees.

Defendant first argues that the Anderson Declaration and attached spreadsheets are inadequate support for plaintiffs' damages calculation because they fail to "provide a conclusive figure or a defined methodology as to how the Pension Fund calculated the alleged amounts owed."  (Def.'s Opp'n at 4.)  Neither criticism is well-founded.   The Anderson Declaration includes both the amounts that the Fund has calculated it is due from Harborview and a detailed explanation of how those amounts were calculated.  (*See* Anderson Decl. ¶¶ 25-33 & Exs. A-C.) In addition, the spreadsheets, which summarize 557 pages of Harborview's remittance reports and records of contributions paid to the Fund, are admissible summaries of the voluminous underlying evidence which may be used "to prove the content" of the underlying documents. *See* Fed. R. Evid. 1006[10]; *see Service Employees International Union National Industry Pension Fund v. Bristol Manor Health Care Center*, No. 12-cv-1904, 2016 WL 354873, at *8 (D.D.C.

---

[10] Federal Rule of Evidence 1006 provides:

> The proponent may use a summary, chart, or calculation to prove the content of voluminous writings, recordings, or photographs that cannot be conveniently examined in court.  The proponent must make the originals or duplicates available for examination or copying, or both, by other parties at a reasonable time and place.  And the court may order the proponent to produce them in court.

Fed. R. Evid. 1006

Jan. 28, 2016).  Thus, plaintiffs have in fact provided the Court with both a "conclusive figure" and a "defined methodology."

Defendant next argues that plaintiffs' evidence is insufficient because "none of the documents produced by Plaintiffs indicate what eligibility criteria the Pension Fund applied when determining whether Harborview paid the requisite contribution amounts for a given month."  (Def.'s Opp'n at 5.)  More specifically, defendant suggests that plaintiffs may have erroneously included overtime hours or other ineligible hours (*e.g.* hours worked by employees who have been employed for fewer than 90 days) in the gross payroll numbers and thus miscalculated the contributions owed by Harborview.  (*See* Def.'s Opp'n at 5.)  As plaintiffs point out, though, the spreadsheets are based on defendant's remittance reports and thus include only "covered" hours.  Moreover, the remittance reports were produced by Harborview, so defendant has possession of any evidence that might contradict plaintiffs' evidence and, thus, has the ability to offer its own analysis.  Under such circumstances, defendant cannot avoid summary judgment simply by speculating that plaintiffs may have erroneously included ineligible hours without offering any evidentiary support for that contention.[11]  *See, e.g.*, *Bristol Manor*, 2016 WL 354873, at *9 ("If [the defendant] believes the summary evidence to be inaccurate, then the burden falls on [the defendant] to rebut it with affirmative evidence of its own."); *see also* Fed. R. Civ. P. 56(c) ("A party asserting that a fact . . . is genuinely disputed must support that assertion by . . . citing to particular parts of material in the record . . . or . . . showing that the materials cited do not establish the absence . . . of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.").  Yet, that is precisely what

---

[11] The declaration from defendant's attorney stating that he believes such an error might have occurred is not the same as evidence that such an error in fact occurred.

Harborview has done here.  Accordingly, Harborview has failed to show that there is a genuine

dispute as to the gross payroll numbers the Fund used in its calculations.

Defendant's final argument is that the spreadsheets are unreliable evidence because

plaintiffs' interest calculations are "wildly inconsistent," specifically that the spreadsheets reflect

that no interest was charged for months in which plaintiffs' contributions were allegedly

hundreds of days late or that interest was erroneously charged where a contribution was paid on

time.  (Def.'s Opp'n at 4.)  A close look at the spreadsheets reveals that defendant's analysis is

flawed.  First, the spreadsheets that defendant is referring to, which were submitted by defendant

as attachments to a declaration by defendant's attorney, are not the same as the spreadsheets

attached to the Anderson Declaration.  (*Compare* Anderson Decl. Exs. A-C (spreadsheets dated

December 21, 2015) *with* Jasinski Decl. Ex. A (spreadsheets dated October 14, 2015).)  Second,

defendant's spreadsheets are not admissible evidence because they were prepared by plaintiffs

for the purpose of settlement discussions.  *See* Fed. R. Evid. 408; *Bristol Manor*, 2016 WL

354873, at *9.  Third, to the extent defendants' criticisms remain applicable to plaintiffs'

spreadsheets, in all but one instance where defendant contends that interest should have been

charged but was not, plaintiffs have explained that the interest due appears in the "additional

interest due" column instead of first "interest" column.[12]  (*See* Anderson Decl. Ex. A (showing

$958.42 in "additional interest due" for certified assistant nurses in August 2013; showing

$28.32 in interest and $36.73 in "additional interest due" for certified assistant nurses in July

---

[12] There is one example given by defendant that plaintiffs have not addressed: that the
spreadsheets do not show an interest charge for dietary and housekeeping employees in August
2012, even though that payment was 1066 days late.  The Court agrees with defendant that this
appears to be a mistake, but as the mistake redounds to defendant's benefit, it is not a basis for
denying plaintiffs' motion for summary judgment.

2015); *id*. Ex. B (showing $492.47 in "additional interest due" for dietary and housekeeping employees in August 2013; showing $8.83 in additional interest due for dietary and housekeeping employees for August 2015).)  Finally, although defendant contends that plaintiffs have incorrectly assessed the Fund $2.45 worth of interest for its July 2011 dietary and housekeeping payment,[13] plaintiffs have explained that, even though the payment was on time, the interest due is accruing on the $12.82 underpayment.[14]

In the end, none of defendant's arguments challenging the sufficiency of plaintiffs' evidence raise material issues of fact.  *See, e.g.*, *Bristol Manor*, 2016 WL 354873, at *9 (where the employer has "produced no admissible evidence contradicting [p]laintiffs' spreadsheets, nor any colorable argument calling the spreadsheets' accuracy into doubt," "it therefore has not met its burden to point to specific facts in the record that reveal a genuine issue for trial").  Accordingly, plaintiffs are entitled to summary judgment on their delinquent contributions claim.

---

[13] In its opposition, defendant refers to the June 2011 payment, but the $2.45 in interest corresponds to the July 2011 payment.  (*See* Anderson Decl. Ex. B.)

[14] The Court notes that in a recent case brought by the same plaintiffs against a different employer, another district court denied plaintiffs' initial motion for summary judgment because it concluded that the spreadsheets in that case "left the Court sufficiently skeptical of the Fund's numbers that it [wa]s unwilling . . . to enter judgment for the amount the Fund request[ed]."  *See Serv. Employees Int'l Union Nat'l Indus. Pension Fund v. Hamilton Park Health Care Ctr.*, No. 14-cv-0084, 2016 WL 183505, at *2 (D.D.C. Jan. 14, 2016).  In reaching that conclusion, the court indicated it needed to "make[] an "independent determination of the sum to be awarded in judgment."  *See Hamilton Park*, 2016 WL 183505, at *2 (quoting *Int'l Painters & Allied Trades Indus. Pension Fund v. Auxier Drywall, LLC*, 531 F. Supp. 2d 56, 57 (D.D.C. 2008).)  The "independent determination" requirement, though, arises in the context of a default judgment, where, unlike a motion for summary judgment, there is no opposing party.  Accordingly, this Court does not agree that it has an obligation in the summary judgment context to make an "independent determination" of damages.

**CONCLUSION**

Accordingly, and for the reasons stated above, plaintiffs' motion for summary judgment will be granted.  A separate Judgment Order [ECF No. 20] accompanies this Memorandum Opinion.

/s/    *Ellen Segal Huvelle*
ELLEN SEGAL HUVELLE
United States District Judge

Date:   June 10, 2016